**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No: 16-03029-02-CR-S-MDH |
| **CAROLYN ALICE COBB,** | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Timothy A. Garrison, United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on January 23, 2018. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the Government respectfully recommends that this Court sentence the defendant, Carolyn Alice Cobb, to a term of imprisonment of 84 months for her conviction of theft of government property under Count 22, in violation of 18 U.S.C. § 641, and a term of imprisonment of 60 months for each of her convictions of conspiracy to defraud the United States under Count 1, in violation of 18 U.S.C. § 371, and submission of false claims under Counts 2 and 8, in violation of 18 U.S.C. § 287. The Government recommends that these terms of imprisonment run concurrently. The Government further recommends the term of imprisonment be followed by a three-year term of supervised release for each of the defendant's convictions, to run concurrent to one another. The Government also requests that the Court order the defendant to pay $313,244 in restitution to the Internal Revenue Service.

## I. BACKGROUND

On February 23, 2016, a grand jury seated in Springfield, Missouri, returned an indictment against the defendant, Carolyn Alice Cobb, for one count of conspiracy to defraud the United States, two counts for submission of false claims, and one count for theft of government property. (D.E. 1.)[1]

On September 21, 2017, the defendant pleaded guilty to each of the above counts, specified in the indictment as Counts 1, 2, 8, and 22, without a plea agreement. (D.E. 96.) The United States Probation Office submitted its draft presentence investigation report ("PSR") on October 24, 2017. The defendant submitted one objection to the draft PSR stating that the defendant's criminal history score over-represented the seriousness of her criminal history. (PSR Adden.)[2] The Probation Officer disagreed with the defendant's assertion, (PSR Adden.), and filed the final PSR on November 29, 2017. (D.E. 109.) The Probation Officer submitted a second addendum to the PSR on January 16, 2018, which included adjusted Guidelines calculations. (PSR 2d. Adden.)[3] The sentencing hearing is scheduled for January 23, 2018. (D.E. 113.)

## II. FORMULATION OF THE DEFENDANT'S SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines should be applied in an advisory fashion to meet constitutional demands. *Id.* at 258. While this Court is not bound to impose a sentence based solely on the Guidelines, the Court "nevertheless must consult the Guidelines to calculate a defendant's sentence because the

---

[1] "D.E." refers to the docket entry of the instant district court criminal case, case number 16-03029-02-CR-S-MDH, and any associated documents.

[2] "PSR Adden." refers to the presentence investigation report addendum, filed on November 29, 2017.

[3] "PSR 2d. Adden." refers to the second presentence investigation report addendum, submitted to the parties on January 16, 2018.

Guidelines are the critical starting point for fashioning a reasonable sentence [under the statutory sentencing factors]." *United States v. Gregg*, 467 F.3d 1126, 1128 (8th Cir. 2006) (internal quotation omitted). Pursuant to the Sentencing Guidelines, the Court "shall determine the kinds of sentencing and the guideline range as set forth in the guidelines by applying the provisions of this manual . . . " U.S.S.G. § 1B1.1(a). After considering the Sentencing Guidelines, the Court, "shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." U.S.S.G. § 1B1.1(c); *see also* 18 U.S.C. § 3553(a).

After making that determination, the district court, utilizing the § 3553(a) sentencing factors, can impose a more severe or more lenient sentence, as long as it is reasonable. *See Booker*, 543 U.S. at 263-65. The § 3553(a) factors relevant to this matter are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines]; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Upon correctly calculating the Guidelines range, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of a sentencing set forth in 18 U.S.C. § 3553(a). *Id*. As explained below, a sentence of 84 months' incarceration as to Count 22, and 60 months' incarceration each as to Counts 1, 2, and 8, satisfies the criteria set forth in § 3553(a) and is a reasonable and just sentence given the facts and circumstances of the case now before this Court.

## III. DISCUSSION

### A. Statutory and Guidelines Calculations

As a result of the defendant's plea, her statutory maximum sentence for the class D felonies of conspiracy to defraud the United States and submission of a false claim, respectively, is not more than five years' imprisonment. (PSR 26, ¶ 117.) Her statutory maximum for the class C felony of theft of government property is ten years' imprisonment. *Id.* The PSR and the second PSR addendum assessed the defendant a criminal history score of 31, and found that the defendant's criminal history category was VI and the total offense level was 21. (PSR 23, 26, ¶¶ 100, 101, 118; PSR 2d. Adden.) The PSR stated the Court may impose a term of supervised release of not more than three years for each count of conviction. (PSR 26, ¶ 120.) Based on the defendant's criminal history category of VI and a total offense level of 21, the Guidelines imprisonment range is 77 months to 96 months within Zone D of the Sentencing Table, with the defendant ineligible for probation, and a Guidelines supervised release term of one year to three years for each count. (PSR 26, ¶¶ 118, 122, 125; PSR 2d. Adden.) The Government concurs with this assessment.

### B. Statutory Sentencing Factors

#### 1. *Nature and Circumstances of the Offense and History of the Defendant*

The Government's recommended sentence appropriately reflects "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). "In fashioning a 'sentence sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a), 'district courts are not only permitted, but required, to consider the history and characteristics of the defendant.'" *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007)). Consequentially, "factors

4

such as a defendant's age, medical condition, prior military service, family obligations . . . etc., can form the bases for a variance even though they would not justify a departure." *Id*. at 830-31 (citing *United States v. Ryder*, 414 F.3d 908, 920 (8th Cir. 2005)).

The PSR thoroughly discussed the nature of this case in paragraphs 3 through 46 of the PSR. (PSR 4-12, ¶¶ 3-46.) In this particular case, the defendant engaged in a three-year conspiracy to defraud the United States of approximately $718,927, through the filing of false tax claims, of which $698,643 is attributable to the defendant. *Id*. The conspirators successfully defrauded the Internal Revenue Service of $317,785, of which $313,244 is attributable to the defendant. (PSR 8, ¶ 13.) As a part of the scheme, the defendant recruited individuals to provide their personal identifying information for use in the false tax returns, controlled the defrauded money through her bank account, and personally profited from the fraud. (PSR 7, 9 ¶¶ 10, 20-25.) While the PSR did not assign the defendant an enhancement as a "manager or supervisor," these recruitment and asset management responsibilities certainly qualify as aggravating characteristics. *See* (PSR 28, ¶ 132.)

The defendant claims that she engaged in this conspiracy because she needed money during a time when she was unemployed. (PSR 10, 23 ¶¶ 23, 25, 115.) However, the defendant's theft of over $300,000 goes well beyond any motive related to survival. Further, the defendant's repetitive thefts from the Internal Revenue Service deprived the Government from money that indirectly funds various programs that assist individuals in the defendant's position with obtaining employment. Thus, the defendant's actions actually undermined her overall motive. Instead of taking advantage of the effective vocational rehabilitation programs available to her, the defendant instead chose to make a lifelong career out of theft and deceit.

The defendant is a 56-year-old female who has a criminal history score of 31 and a criminal history category of VI. (PSR 3, 23, ¶¶ 100.) While the defendant claims through her PSR objection that her criminal history score "substantially over-represents the seriousness of defendant's history," (PSR Adden.), quite the opposite is true. The defendant's astronomical criminal history score actually underrepresents her criminal history, as it does not account for eight other theft convictions, and a conviction for obstructing an officer. (PSR 14-23, ¶¶ 63-97.) In total, the defendant has earned 25 convictions for stealing, of which eight were felony convictions, a separate felony conviction for possession of a controlled substance, and misdemeanor convictions for assault in the third degree and obstructing an officer. *Id*. These convictions represent the various ways the defendant has disobeyed the law throughout her adult life and, along with the instant offenses, exhibit the defendant's dangerous and recidivist criminal nature. Further, the defendant has repeatedly disregarded court orders, as she has had her probation revoked on three occasions and failed to appear on three occasions. *Id*. To further highlight her disregard for the law, the defendant committed the instant offenses while she was on probation in two state cases. (PSR 23, ¶ 99.)

Despite repeatedly receiving probation and lenient terms of imprisonment, the defendant continues to commit crimes. These past convictions, and her continued illegal actions, exhibit her blatant disregard for the judicial system, for law enforcement, and for the safety of the community.

The defendant reported no childhood hardships and the PSR reflects that she is in good mental health. (PSR 24, ¶¶ 105-06, 110.) The defendant stated she is in good physical health, though she reported that she continues to suffer effects from a car accident in 2005. (PSR 24, ¶ 109.) The defendant reported a history of substance abuse and specifically mentioned that she recreationally used marijuana for many years. (PSR 25, ¶¶ 112-13.) Though she did not report

any other substance abuse history, aside from trying cocaine once in her twenties, the defendant was convicted of possession of cocaine in 2012. (PSR 23, 25, ¶¶ 97, 112-13.) The defendant further reported that she has never attended substance abuse treatment, which is consistent with the fact that she had her probation revoked in 1996 for failing to attend substance abuse treatment while on probation for a prior theft conviction. (PSR 17, 25, ¶¶ 79, 113.) The defendant reported that she is currently single and has no marital history. (PSR 24, ¶ 107.) She completed high school and has been unemployed since 2007. (PSR 25, ¶¶ 114-15.)

In making its recommendation, the Government has taken into consideration the instant offense, the defendant's relevant conduct, and the defendant's significant criminal history. The Government believes that its recommendation reflects the appropriate balance between any possible mitigating factors and the nature of her current conduct.

The Guidelines range in this case is 63 months to 78 months. The Government respectfully asserts that a sentence of 84 months for Count 22, and a 60-month sentence for Counts 1, 2, and 8, respectively, is appropriate given the nature and circumstances of this case and the defendant's history.

### 2. *Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such considerations reflect the need for retribution, the need to make the punishment fit the crime, and the need not just to punish, but to punish justly.

In this case, the seriousness of the defendant's crime is reflected in the actions described above, as well as in statute and the Sentencing Guidelines. The defendant's conspiracy to defraud the United States and her submission of false tax claims each subject her to a maximum five-year

prison sentence. 18 U.S.C. §§ 287, 371. The defendant's conviction for theft of government property subjects her to a maximum ten-year sentence. 18 U.S.C. § 641.

While the Sentencing Guidelines consider the actions of the defendant when determining a sentencing range, her criminal history and conduct in this case reveal a longstanding pattern of fraudulent activity for the purpose of financial gain. Additionally, only the discovery of these instant crimes by the Internal Revenue Service prevented her from fleecing hundreds of thousands of more dollars through her scheme. The defendant committed the instant offenses knowing that she had already received probation and other lenient sentences for numerous other convictions. Despite these lenient punishments, the defendant continued her life of crime, and her actions in this case demonstrate a lack of respect for the law, as well as her purposeful and serious determination to continue her illegal activity.

Based on the defendant's history and actions, the Government's recommendation reflects the seriousness of the offense, promotes respect for the law, and provides punishment that is sufficient, but not greater than necessary.

### 3. *Need to Afford Adequate Deterrence to Criminal Conduct*

An 84-month sentence would also "afford adequate deterrence to criminal conduct" and would "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C). The Government asserts that the more serious the crime, the greater the defendant's role in it, and the more times a person has committed such offense or similar offenses, the more important it is to send a strong and clear message that will not only deter others, but will also deter the specific defendant. Given the defendant's prior sentences and the repetitive conduct she exhibited in the instant case, the Government believes a lengthy prison sentence is essential to send such message.

In this case, the defendant, although not labeled with a "manager or supervisor" designation like her co-conspirators, (PSR 8, ¶ 14), held management responsibility over the proceeds of the conspiracy and recruitment responsibility to engage others to participate in the fraud.

While this case is certainly not controlling within the Eighth Circuit, in *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006), the Court noted that generally "[E]conomic and fraud-based crimes are . . . prime candidates for general deterrence. Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." Such an argument can be made in this case as the defendant certainly understood the unlawfulness of her actions and the risks associated with her criminal conduct, yet those penalties were outweighed by the defendant's desire to reap the financial rewards from the scheme.

Further, the defendant's criminal history and her commission of this extensive fraud demonstrate that she believes she will continue receiving lenient treatment for such violations just as she has for her past convictions. The defendant's actions after receiving such sentences are evidence that her prior sentences of probation and minimal imprisonment not only failed to deter future criminal conduct, but also clearly emboldened her life of crime.

While it is impossible to truly determine if others will be deterred from committing future crimes, an 84-month sentence will specifically deter this defendant from committing additional crimes for such period of time. In this case, an extended period of incarceration is essential to both protect the community and educate this defendant that any future criminal behavior will ensure even lengthier periods of incarceration moving forward. Given the need to afford adequate deterrence against future criminal conduct, the Government respectfully requests a sentence of 84

months' imprisonment for Count 22, and a sentence of 60 months' imprisonment for each of the remaining counts.

### 4. *Need to Protect the Public from Further Crimes of the Defendant*

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877-78 (7th Cir. 2007)). An 84-month sentence will protect the public from future crimes of this defendant. The defendant has shown that she is an ever-growing financial danger to the community. Her recent actions prove that she is incapable of controlling her fraudulent behavior and she continues to engage in ever larger, more complex, and more damaging fraud schemes. Based upon the defendant's history and characteristics, it is clear that society is in need of protection from her.

### 5. *Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

A sentence of 84 months would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). From the outset, a correct calculation of the Guidelines range protects against *unwarranted* disparities among *similarly situated* defendants. *See Gall v. United States*, 552 U.S. 38, 55 (2007) ("avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges") (emphasis added). Given the Guidelines range and the defendant's criminal history, the Government's recommendation for a within-Guidelines sentence reflects an outcome that is consistent with sentences received by those with similar criminal history and conduct.

## IV. CONCLUSION

Ultimately, 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory Guidelines range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to specifically deter this defendant from future criminal conduct, the need to protect the public from the defendant, and any other statutory sentencing factors be considered in reaching an appropriate sentence.

Accordingly, the Government respectfully requests that this Court impose a sentence of 84 months' imprisonment to be followed by a three-year term of supervised release for Count 22, and a sentence of 60 months' imprisonment to be followed by a three-year term of supervised release for Counts 1, 2, and 8, respectively. The Government requests that all sentences run concurrently. The Government also requests that this Court order the defendant to pay restitution of $313,244 to the Internal Revenue Service.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney

*/s/ Casey Clark*
Casey Clark
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417) 831-4406

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of January 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Casey Clark*
Casey Clark
Assistant United States Attorney